**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Judge _____

Case No. _____

ELECTRONIC PAYMENT SYSTEMS, LLC,
    a Colorado limited liability company

            Plaintiff,

v.

ELECTRONIC PAYMENT SOLUTIONS OF AMERICA INC.,
a company incorporated in Arizona, JAY WIGDORE,
MICHAEL ABDELMESSH aka MICHAEL STEWART,
FIRST PAY SYSTEMS, LLC, RICHARD KUHLMANN,
FIRST PAY SOLUTIONS, LLC, FIRST DATA CORPORATION,
and WELLS FARGO BANK N.A.

            Defendants.
_____

**COMPLAINT**
_____

**COMES NOW,** Electronic Payment Systems, LLC, ("EPS"), by and through its attorneys, the KROB LAW OFFICE, LLC, and hereby complains against Defendants as follows:

**PARTIES**

1.    Plaintiff Electronic Payment Systems, LLC, (EPS) is a limited liability company organized and existing under the laws of the state of Colorado with its principal place of business at 6472 South Quebec Street, Englewood, Colorado 80111. Both of its members are also residents of Colorado.

2. Defendant Electronic Payment Solutions of America Inc (EPSA) is a business organized and existing under the laws of the state of Arizona with its principal place of business at 1048 North 44th Street, Phoenix, Arizona 85008.

3. Defendant Jay Wigdore is an individual residing in the State of Arizona.

4. Michael Abdelmessh is an individual residing in the State of Arizona.

5. Defendant Richard Kuhlmann is an individual residing in the State of Arizona.

6. First Pay Systems, LLC is a limited liability company organized and existing under the laws of the State of Arizona with its principal place of business being at 2800 S Rural Road, #104, Tempe, Arizona 85282.

7. First Pay Solutions, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with no registered agent.

8. First Data Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 5565 Glenridge Connector NE, Atlanta, Georgia 30342.

9. Wells Fargo Bank, National Association, is a California corporation with its principal place of business at 101 N Phillips Avenue, Sioux Falls, South Dakota 57104.

**JURISDICTION AND VENUE**

10. Under the Marketing Agreement entered into by the parties, Defendants Electronic Payment Solutions of America, Inc., Wigdore, Abdelmessh, First Pay Systems, LLC, Kuhlmann, and First Pay Solutions consented, either directly or as an

individual or entity related to Defendant Electronic Payment Solutions of America, Inc., to jurisdiction and venue in courts of the State of Colorado or in the United States District Court for the District of Colorado.

11. This Court has jurisdiction over all parties other than Defendants First Data Corporation and Wells Fargo Bank, N.A., based on the Marketing Agreement.

12. This court has jurisdiction over Defendants First Data Corporation and Wells Fargo Bank, N.A., because they are both regularly engaged in conducting business within the State of Colorado.

13. This court has jurisdiction over this case pursuant to 28 U.S.C. Section 1332 because EPS and Defendants are citizens of different states and the value of the matter in controversy exceeds the sum of $75,000.

14. Venue is proper based upon the agreement of the parties and their contacts with the State of Colorado.

15. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. Section 1391(b)(2).

**GENERAL ALLEGATIONS**

16. EPS is engaged in the business of marketing, selling, providing, and managing credit and debit card services, check services and other merchant related services and products to merchants (collectively referred to as Processing Services).

17. EPS is an Independent Sales Organization (ISO) duly authorized by Visa, a Merchant Service Provider (MSP) duly authorized by MasterCard, and a duly authorized ISO by Discover Network.

18. On or about March 15, 2013, Defendants Wigdore and Abdelmessh, personally and on behalf of Defendant EPSA, entered into the Marketing Agreement with EPS.

19. Upon information and belief, Defendant Kuhlmann was an agent, employee, or independent contractor of Defendant EPSA.

20. Upon information and belief, Defendant First Pay Systems, LLC is a successor in interest to Defendant EPSA.

21. The Marketing Agreement provides for Defendants Wigdore, Abdelmessh, and Electronic Payment Solutions of America, Inc. (collectively the EPSA Defendants) to act as an Independent Contractor for EPS, marketing and selling the services and products EPS provides to merchants, including among other things, credit/debit card processing services.

22. Pursuant to the provisions of the Marketing Agreement, the EPSA Defendants agreed to solicit merchants to use EPS' Processing Services.

23. If the EPSA Defendants were successful in soliciting a merchant and if the merchant was acceptable to EPS, then EPS and the merchant would enter into an agreement, commonly referred to as a Merchant Agreement.

24. Once a merchant has entered in to a Merchant Agreement, for each credit or debit card or other similar transaction processed, a small percentage of the transaction amount is used to pay the fees associated with the transaction. Visa or MasterCard, the acquiring bank, and EPS receive a small portion of each fee for each transaction.

25. This fee earned by EPS from each transaction is referred to as the "Residual."

26. In addition, when a merchant processes a customer's credit or debit card transaction, the acquiring bank receives payment from the customer's credit or debit card "issuing bank."

27. The acquiring bank, in turn, remits the payment to the merchant, who accepted the debit or credit card as payment.

28. If the debit or credit card holder later disputes the debit or credit transaction (such disputes, also known as "chargebacks", occur for a multitude of reasons including but not limited to, the goods or services were not as described, the card holder did not receive the goods or services purchased, or the transaction was not properly authorized or was fraudulent), the debit or credit card holder can demand money back from its issuing bank.

29. If the merchant fails to provide evidence that the transaction was legitimate, the issuing bank will initiate a "chargeback," which, in accordance with detailed card Association regulations, requires the acquiring bank to immediately return the customer funds to the issuing bank.

30. Once the acquiring bank has returned the customer funds to the issuing bank, the acquiring bank attempts to collect the funds from the merchant.

31. If the acquiring bank is unable to collect the charge back funds from the merchant, the result is what is known in the industry as an "uncollectible chargeback."

**First claim for relief – Breach of contract –
Uncollectible chargeback's - Defendants Wigdore and Abdellmessh**

32. EPS repeats and realleges the foregoing paragraphs, as if fully set forth herein.

33. As a standard practice with ISO's in the industry and as part of its agreement with its acquiring bank, EPS agreed that as between the acquiring bank and EPS, EPS would bear the risk of uncollectible chargebacks.

34. Pursuant to the provisions of the Marketing Agreement, EPS passed this risk associated with uncollectible chargebacks on to the EPSA Defendants. Specifically, Section 8.1 of the Marketing Agreement obligated the ESPA Defendants to indemnify EPS against all losses.

35. In addition, the EPSA Defendants made multiple verbal agreements to indemnify and make whole EPS for any and all losses incurred by EPS from merchants acquired by the EPSA Defendants, including uncollectible chargebacks.

36. From March 2013 through February 15, 2014, the EPSA Defendants partially complied with their obligation to indemnify EPS for uncollectible chargebacks resulting from merchants brought to EPS by EPSA.

37. Beginning February 15, 2014 and continuing through July 31, 2014 merchants brought to EPS by the EPSA Defendants accrued well over $1 million in uncollectible chargeback's, for which the EPSA Defendants did not and have not paid EPS.

38. In March 2014, EPS sent the EPSA Defendants a notice of Termination Breach, along with a demand for unpaid funds.

39. The EPSA Defendants ceased making any payments toward the uncollectible chargebacks and are still delinquent and indebted to EPS for such chargebacks in the amount of $1,396,576.44.

40. Additionally, uncollectible chargebacks will continue to accumulate as credit and debit card customers may and will likely dispute transactions in the future.

41. Pursuant to the parties' agreement, the EPSA Defendants had a duty to indemnify EPS from all losses that occurred as a result of the EPSA Defendant's merchants, including uncollectible chargebacks.

42. The EPSA Defendants breached their duty to EPS by failing to pay EPS the $1,396,576.44 EPS lost as a result of uncollectible chargebacks from merchants brought to EPS by the EPSA Defendants.

43. Defendants' breach caused EPS losses of at least $1,396,576.44.

44. EPS has substantially performed its obligations under the Marketing Agreement.

45. Pursuant to the Agreement Defendants are jointly and severally liable for damages resulting from their breaches.

46. Pursuant to the Agreement Defendants agreed to indemnify EPS against any and all losses, damages and liabilities including attorney's fees and litigation costs.

### Second claim for relief – Breach of contract – Failure to market EPS Processing Services - Defendants Wigdore and Abdelmessh

47. EPS repeats and realleges the foregoing paragraphs, as if fully set forth herein.

48. The initial term of the Marketing Agreement was for a period of three years commencing March 15, 2013.

49. During the term of the Marketing Agreement, the EPSA Defendants were obligated to market and sell the EPS Processing Services.

50. Although the EPSA Defendants initially complied with their ongoing obligation to market and sell the EPS Processing Services, on information and belief Defendants have failed to market or sell the EPS Processing Services since December 2013.

51. Defendants have breached the Marketing Agreement by failing to continue to market and sell the EPS Processing Services throughout its term.

52. EPS has substantially performed its obligations under the Marketing Agreement.

53. As a result of the EPSA Defendants' breach, EPS has suffered damages and is entitled to relief as prayed for below.

### Third claim for relief – Breach of contract – Violation of first right of refusal provision - Defendants Wigdore and Abdelmessh

54. EPS repeats and realleges the foregoing paragraphs, as if fully set forth herein.

55. During the term of the Marketing Agreement, the EPSA Defendants were to offer all applications for processing services they obtained from merchants to EPS on a first right of refusal basis.

56. On information and belief, the EPSA Defendants have obtained an unknown number of applications for processing services from merchants, but have failed to provide such applications to EPS on a first right of refusal basis.

57. Defendants have breached the Marketing Agreement by failing to provide merchant applications to EPS on a first right of refusal basis.

58. EPS has substantially performed its obligations under the Marketing Agreement.

59. As a result of Defendants' breach, EPS has suffered damages and is entitled to relief as prayed for below.

### Fourth claim for relief – Breach of Contract – Unauthorized merchant rollover or alternate bank placement - Defendant Wigdore

60. EPS repeats and realleges the foregoing paragraphs, as if fully set forth herein.

61. Under section 11 of the Marketing Agreement Defendant Wigdore was barred from contacting, soliciting, or otherwise recommending any EPS merchants obtain processing services through another service provider.

62. Upon information and belief, Defendant Wigdore, through Defendant First Pay Systems, LLC violated this agreement by contacting, soliciting and recommending merchants that had previously entered into agreements for Processing Services through banks designated by EPS to other banks and processor services.

63. EPS has substantially performed its obligations under the Marketing Agreement.

64. EPS was damaged as a result of Defendant's breach of the contract, resulting in liquidated damages in the amount of $1,500 per merchant pursuant to the parties' agreement. The total number of merchant "rollovers" that have occurred is currently unknown to EPS.

**Fifth claim for relief – Breach of Contract – Violation of competitive actions provision of Marketing Agreement – Defendant Wigdore**

65. EPS repeats and realleges the foregoing paragraphs, as if fully set forth herein.

66. Under section 17 of the Marketing Agreement Defendant Wigdore was prohibited during the term of the agreement and two years from the date of termination, from, in any capacity, taking any action that would be considered to be in competition with EPS in any of the areas serviced by EPS.

67. Defendant Wigdore breached this duty by contacting and soliciting merchants to sign up for merchant services with Defendant First Pay Systems, LLC, a company in direct competition with EPS.

68. EPS has substantially performed its obligations under the Marketing Agreement.

69. EPS was damaged as a result of Defendant's breach of the contract, and is entitled to relief as prayed for below.

### Sixth claim for relief - Interference with contract –
### Defendants Kuhlmann, First Pay Systems, LLC, First Pay Solutions, LLC, Wells Fargo Bank N.A. and First Data Corporation

70. EPS repeats and realleges the foregoing paragraphs, as if fully set forth herein.

71. EPS entered into a contract, the Marketing Agreement, with Defendant Wigdore.

72. Defendants Kuhlmann, First Pay Systems, LLC, First Pay Solutions, LLC, Wells Fargo Bank N.A. and First Data Corporation had knowledge of the contract or facts which would lead them to inquire into the existence of the contract.

73. Defendants intended to induce Defendant Wigdore to breach his contract with EPS.

74. Defendants actively paid and encouraged Defendant Wigdore to violate his contract with EPS by, among other actions, facilitating the "rolling over" of EPS merchants accounts, encouraging or enabling Defendant Wigdore to directly compete

with EPS, and encouraging, inducing, facilitating or causing Defendant Wigdore to violate the first right of refusal provision of the Marketing Agreement.

75. EPS was damaged as a result of Defendants' actions as it lost merchants and their corresponding revenue and is entitled to relief as prayed for below.

**Seventh claim for relief – Conspiracy to interfere with contract –
Defendants Kuhlmann, First Pay Systems, LLC, First Pay Solutions, LLC,
Wells Fargo Bank N.A. and First Data Corporation**

76. EPS repeats and realleges the foregoing paragraphs, as if fully set forth herein.

77. Defendants Kuhlmann, First Pay Systems, LLC, First Pay Solutions, LLC, Wells Fargo Bank N.A. and First Data Corporation intended to interfere with the Marketing Agreement between EPS and Defendant Wigdore.

78. Said Defendants agreed to interfere with the Marketing Agreement, inducing Defendant Wigdore to breach his duties, including but not limited to, his duty not to compete and not to rollover merchants.

79. In furtherance of this goal, said Defendants paid or otherwise compensated Defendant Wigdore to breach his contract with EPS.

80. As a result of Defendants' actions, and the subsequent breach, EPS was damaged.

## Eighth claim- Declaratory Judgment regarding termination of
## EPSA Defendants' residuals

81. EPS repeats and realleges the foregoing paragraphs, as if fully set forth herein.

82. EPS is entitled to and hereby seeks a judicial determination and declaration pursuant to 28 U.S.C. Section 2201 and Fed.R.Civ.P. 57, of the parties' rights, status, and legal relations under the Marketing Agreement.

83. Pursuant to Schedule A of the Marketing Agreement, the EPSA Defendants were obligated to provide a minimum two merchants to EPS each month throughout the term of the agreement in order to be vested in receiving residual payments from EPS.

84. The EPSA Defendants have failed to provide the minimum two merchants per month or any merchants for that matter from February 2014 through the present.

85. EPS seeks a declaration that as a result of the EPSA Defendants failure to provide the minimum number of merchants to EPS each month, as well as the other breaches of the Marketing Agreement by the EPSA Defendants, as set forth above, the EPSA Defendants have lost an right or entitlement to receive residuals and EPS is permanently relieved of any obligation to pay residuals from and after February 2014.

**WHEREFORE**, EPS prays that this Court enter judgment for Plaintiff Electronic Payment Systems, LLC, and against Defendants jointly and severally as follows:

A. Damages against Defendants, jointly and severally, in the amount to be determined by the Court;

B. Pre and post-judgment interest as statutorily permitted;

C. Reasonable costs and attorneys fees for EPS and against the EPSA Defendants pursuant to Section 8.1 of the parties' Marketing Agreement;

D. For a declaration that Plaintiff EPS has nor further obligation to pay residuals to the EPSA Defendants, and

E. For such other and further relief as may be just and proper.

**DATED** this 22nd day of September, 2014.

/s/Scotty P. Krob
Scotty P. Krob
KROB LAW OFFICE, LLC
8400 E. Prentice Avenue, Penthouse
Greenwood Village CO 80111
Telephone: (303) 694-0099
Facsimile: (303) 694-5005
scott@kroblaw.com
**COUNSEL for**
**ELECTRONIC PAYMENT SYSTEMS, LLC**